UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————————

| | | |
|---|---|---|
| ZIBA MONFARED, | : | |
| | : | |
| Plaintiff, | : | |
| v. | : | No. 5:15-cv-04017 |
| | : | |
| ST. LUKE'S UNIVERSITY HEALTH | : | |
| NETWORK; ST. LUKE'S PHYSICIAN | : | |
| GROUP, INC.; NAZARETH FAMILY | : | |
| PRACTICE, | : | |
| | : | |
| Defendants. | : | |

———————————————————————————

## MEMORANDUM OPINION AND ORDER

### Defendants' Motion to Compel Arbitration, ECF No. 7 – Granted

**Joseph F. Leeson, Jr.**                                          **April 22, 2016**
**United States District Judge**

Defendants filed a Motion to Compel Arbitration. ECF No. 7. For the reasons set forth

below, Defendants' Motion is granted.

## I.      Background

Plaintiff Ziba Monfared is a female of Iranian descent who was formerly employed by

Defendants as a physician at their Nazareth, Pennsylvania, location. Compl. ¶¶ 14-15, ECF

No. 1. She alleges that Defendants terminated her employment in retaliation for her opposition to

the discriminatory behavior of Defendants' management personnel, which violated her rights

under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. Compl. ¶¶ 17-35.

In response to Monfared's Complaint, Defendants filed the present Motion to Compel

Arbitration, contending that Monfared's claims are subject to arbitration under the terms of a

Letter Agreement that Monfared signed when she began her employment. See Defs.' Mem. 1,

1

ECF No. 7-1. The Letter Agreement states that it "serves as a formal employment agreement" between Defendants and Monfared. <u>See</u> Pinel Aff. Ex. B, at 1 ECF No. 7-2. The Agreement sets forth terms of Monfared's employment, including provisions concerning compensation, the term and termination of her employment, non-competition, and other matters. <u>Id.</u>

The arbitration clause at issue here is found in a section of the Letter Agreement titled "Governing Law; Dispute Resolution," which reads as follows:

> This letter agreement shall be deemed to have been made and shall be construed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania. In any equitable action for specific performance or injunctive relief, the parties hereby submit to the jurisdiction of the Courts of Lehigh County, Commonwealth of Pennsylvania. Except for actions for specific performance or injunctive relief, if a dispute or claim should arise that does not get resolved through negotiation of the parties, the parties will attempt in good faith to resolve the dispute or claim by mediation administered by the American Arbitration Association (AAA) under its Employment Mediation Rules, before resorting to arbitration. . . . If the matter has not been resolved within sixty (60) days of the initiation of such procedure, or if either party refuses to participate in the mediation, the controversy shall be resolved by binding arbitration under the Employment Arbitration Rules of the AAA, by one neutral arbitrator. . . . THE ARBITRATOR SHALL NOT AWARD ANY PARTY PUNITIVE OR EXEMPLARY DAMAGES, AND EACH PARTY HEREBY IRREVOCABLY WAIVES ANY RIGHT TO SEEK SUCH DAMAGES. All costs of mediation or arbitration shall be evenly divided between the parties, exclusive of each party's legal fees, each of which shall be borne by the party that incurs them.

<u>Id.</u> at 8.

## II.     Legal Standard – Motion to compel arbitration

The United States Court of Appeals for the Third Circuit recently "clarif[ied] the standards to be applied to motions to compel arbitration, identifying the circumstances under which district courts should apply the standard for a motion to dismiss, as provided by Rule 12(b)(6) of the Federal Rules of Civil Procedure, and those under which they should apply the summary judgment standard found in Rule 56." <u>Guidotti v. Legal Helpers Debt Resolution, L.L.C.</u>, 716 F.3d 764, 767 (3d Cir. 2013). As the Court of Appeals instructed, "when it is

apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that

certain of a party's claims 'are subject to an enforceable arbitration clause, a motion to compel

arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay.'" Id.

at 776 (quoting Somerset Consulting, LLC v. United Capital Lenders, LLC, 832 F. Supp. 2d 474,

482 (E.D. Pa. 2011)). However,

> if the complaint and its supporting documents are unclear regarding the agreement
> to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with
> additional facts sufficient to place the agreement to arbitrate in issue, then "the
> parties should be entitled to discovery on the question of arbitrability before a
> court entertains further briefing on [the] question." . . . . After limited discovery,
> the court may entertain a renewed motion to compel arbitration, this time judging
> the motion under a summary judgment standard.

Id. (quoting Somerset Consulting, 832 F. Supp. 2d at 482).

## III.    Analysis

### A.    Monfared's claims are within the scope of the arbitration clause.

Defendants contend that Monfared's "claims and disputes with Defendants are well

within the scope of the broad Arbitration Clause of Plaintiff's Agreement," Defs.' Mem. 9, and

that the Court should therefore issue an order staying the current proceedings and compelling the

parties to arbitrate the dispute.

Monfared acknowledges that the arbitration agreement is "valid and enforceable," but she

contends that Defendants' Motion nevertheless "must fail as Plaintiff's statutory claims

plead[ed] in her Complaint are not within the scope of the Letter Agreement, either expressly or

by implication." Pl.'s Mem. Opp'n 10, ECF No. 10. She contends that "[t]he arbitration clause is

preceded by the qualifying phrase '[t]his Letter Agreement,' thereby indicating that it

encompasses solely those disputes as to the subjects identified therein." Id. at 14. Further,

Monfared contends that the Letter Agreement does not "include any guidance with respect to

resolution of disputes or claims for discrimination or retaliation under Title VII or 42 U.S.C. § 1981," nor does the agreement "contain any broad-sweeping, 'catch-all phrases' from which it could be reasonably inferred that the arbitration clause encompasses 'any and all disputes arising out of or related to Plaintiff's employment' – such as Federal statutory claims." Id. at 14-15.

The Federal Arbitration Act, 9 U.S.C. §§ 1–13, establishes "a uniform federal law over contracts which fall within its scope." Goodwin v. Elkins & Co., 730 F.2d 99, 108 (3d Cir. 1984). Because neither party contests the validity of the arbitration clause, the Court confines its inquiry to assessing whether the dispute at issue falls within the scope of that clause. Further, because neither party questions the propriety of this Court determining whether the dispute is arbitrable, the Court "assume[s], without further analysis, that the [a]greement leaves the question of arbitrability to judicial determination." See CardioNet, Inc. v. Cigna Health Corp., 751 F.3d 165, 172 (3d Cir. 2014) (citing Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287 (2010)). The United States Court of Appeals for the Third Circuit recently summarized the standards governing a court's interpretation of the scope of an arbitration clause:

> [The court] must resolve "any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24–25, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); see also Medtronic AVE, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 55 (3d Cir. 2001) (noting that "federal policy favors arbitration"). However, the Supreme Court has repeatedly warned against "overread[ing its] precedent [ ]" concerning the presumption of arbitrability. E.g. Granite Rock, 130 S. Ct. at 2857. The presumption in favor of arbitration does not "take[ ] courts  outside [the] settled framework" of using principles of contract interpretation to determine the scope of an arbitration clause. Id. at 2859. Quite the contrary, the presumption "derives its legitimacy from" the judicial supposition "that arbitration of a particular dispute is what the parties intended because their express agreement to arbitrate was validly formed and (absent a provision clearly and validly committing such issues to an arbitrator) is legally enforceable and best construed to encompass the dispute." Id. at 2859–60; see also Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd., 1 F.3d 639, 641 (7th Cir. 1993). Indeed, while the FAA "embodies a strong federal policy in favor of arbitration, . . . the duty to arbitrate remains one assumed by contract." Sweet Dreams Unlimited, 1 F.3d at 641. Thus,

the presumption of arbitrability applies only where an arbitration agreement is ambiguous about whether it covers the dispute at hand. See Granite Rock, 130 S. Ct. at 2858–59. Otherwise, the plain language of the contract controls.

CardioNet, Inc., 751 F.3d at 172-73.

Defendants emphasize the fact that, under Third Circuit precedent, "when phrases such as 'arising under' and 'arising out of' appear in arbitration provisions, they are normally given broad construction . . . ." Defs.' Mem. 8 (quoting Battaglia v. McKendry, 233 F.3d 720, 727 (3d Cir. 2000)); see also Medtronic AVE Inc. v. Cordis Corp., 100 F. App'x 865, 868 (3d Cir. 2004) ("Coupled with [the Third Circuit's] usual strong presumption in favor of arbitrability . . . a clause providing for the arbitration of all matters 'arising from' an agreement overwhelmingly suggests that a given dispute is arbitrable."). In addition, Defendants cite several cases in which courts in this circuit have found broad arbitration clauses in employment agreements to encompass statutory claims such as those raised here. See Tripp v. Renaissance Advantage Charter Sch., No. CIV.A. 02-9366, 2003 WL 22519433, at *3 (E.D. Pa. Oct. 8, 2003) (concluding that a plaintiff's Fair Labor Standards Act claim fell within an arbitration clause in her employment agreement stating that "[a]ll disputes arising out of or concerning this Agreement shall be submitted to binding arbitration"); Goodman v. ESPE Am., Inc., No. 00-CV-862, 2001 WL 64749, at *1 (E.D. Pa. Jan. 19, 2001) (concluding that Title VII claims fell within a clause in an employment contract mandating arbitration of "[any] controversy, dispute or difference arising out of or relative to this Agreement or an alleged breach thereof or otherwise relating to the Employee's employment with the Company"). See also Esaka v. Nanticoke Health Servs., Inc., 752 F. Supp. 2d 476, 482-83 (D. Del. 2010) (concluding that Title VII claims fell within a clause submitting to arbitration "all claims or controversies concerning this Agreement or arising in any way out of the performance of this Agreement"); Gillespie v. Colonial Life &

5

Accident Ins. Co., No. CIV.A. 08-689, 2009 WL 890579, at *7 (W.D. Pa. Mar. 30, 2009) (concluding the same under a clause stating "every claim, controversy or dispute arising out of or related to this Agreement, or the breach thereof, . . .shall be settled by binding arbitration"); Hearon v. AstraZeneca LP, No. CIV.A.02-3189, 2003 WL 21250640, at *5-7 (E.D. Pa. May 24, 2003) (concluding the same under a clause stating that any claim "arising out of or relating to any provision of this Contract or the Employee's Termination . . . shall be settled by arbitration").

Here, the arbitration clause does not explicitly state that it embraces all claims "arising under," "arising out of," "arising from," or "related to" Monfared's employment agreement or her employment. Rather, the clause more ambiguously states that the parties shall arbitrate "if a dispute or claim should arise." As Monfared points out, the context of the clause suggests that it may be limited to disputes about the contents of the Letter Agreement, which does not address employment discrimination matters. Nor do Monfared's claims depend on an interpretation of the Letter Agreement.

On the other hand, the arbitration clause does not expressly limit its application to disputes over the contents of the Letter Agreement, and it is plausible to read the clause more broadly as applying to any dispute or claim related to or arising out of the Letter Agreement or the employment relationship established by the Letter Agreement, which would include the claims raised here. For this reason, the Court finds that the language of the arbitration clause creates doubt concerning the scope of arbitrable issues. Because the Court is required to resolve any doubts concerning the clause in favor of arbitration, the Court finds that Monfared's claims are arbitrable.

**B.** **The limitation of damages in the arbitration clause can be severed from the rest of the clause.**

Monfared contends that even if the arbitration clause encompasses her claims, the clause nevertheless should not be enforced "because doing so would preclude Plaintiff from seeking and obtaining exemplary or punitive damages." Pl.'s Br. Opp'n 18.[1]

 "It is well established that arbitration is merely a choice of dispute resolution and does not infringe upon statutory protections." Spinetti v. Serv. Corp. Int'l, 324 F.3d 212, 216 (3d Cir. 2003). For this reason, "arbitration is to offer claimants the full scope of remedies available under Title VII." Id. (quoting Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 673 n.15 (6th Cir. 2003)). This arbitration clause's ban on punitive and exemplary damages runs counter to statutory provisions under Title VII permitting punitive damages.[2] Nevertheless, the presence of this provision does not require the Court to decline to enforce the arbitration agreement. Rather, this provision represents only a part of the agreement and can be severed without disturbing the primary intent of the parties to arbitrate their disputes. See id. (affirming a district court's severance of a provision in an arbitration clause requiring, contrary to Title VII, that each party pay its own attorney fees, and observing that "[y]ou don't cut down the trunk of a tree because some of its branches are sickly"); see also Cirino v. L. Gordon Holdings, Inc., No. 13-CV-4800, 2014 WL 2880291, at *6 (E.D. Pa. June 25, 2014) (severing provision denying the arbitrator the ability to award punitive damages under § 1981). As Defendants point out,

---

[1] As quoted above, the arbitration clause provides that "THE ARBITRATOR SHALL NOT AWARD ANY PARTY PUNITIVE OR EXEMPLARY DAMAGES, AND EACH PARTY HEREBY IRREVOCABLY WAIVES ANY RIGHT TO SEEK SUCH DAMAGES."

[2] A Title VII plaintiff may recover punitive damages for intentional discrimination where "the complaining party demonstrates that the respondent engaged in . . . discriminatory practices with malice or with reckless indifference to . . . federally protected rights." 42 U.S.C. § 1981a(b)(1). Likewise, punitive damages are available under § 1981. See Johnson v. Ry. Express Agency, Inc., 421 U.S. 454, 460 (1975).

severance is particularly appropriate where, as here, the agreement contains a provision "calling for the severance of invalid provisions." Defs.' Reply 10, ECF No. 13 (quoting <u>Parilla v. IAP Worldwide Servs., VI, Inc.</u>, 368 F.3d 269, 288 (3d Cir. 2004)).[3] Accordingly, the arbitration clause's ban on punitive and exemplary damages is severed from the remainder of the clause, with the result that the arbitrator is permitted to award punitive damages consistent with Title VII and § 1981.[4]

### C.    The limitation on attorney's fees can be severed from the clause, and Monfared is entitled to discovery regarding the costs of arbitration.

Finally, Monfared contends that the arbitration agreement is unenforceable because it requires her to pay a portion of the arbitrator's fees. Pl.'s Mem. Opp'n 18-23. The clause provides that "[a]ll costs of mediation or arbitration shall be evenly divided between the parties, exclusive of each party's legal fees, each of which shall be borne by the party that incurs them." Pinel Aff. Ex. B, at 8. To the extent that this provision prohibits the arbitrator from awarding attorney's fees and costs to the prevailing party, it runs counter to statutory provisions under Title VII permitting such an award. <u>See</u> <u>Spinetti</u>, 324 F.3d at 216. Accordingly, the Court severs the cost-splitting clause to the extent that it contradicts Title VII's provision for awards of attorney's fees.

---

[3]      The Letter Agreement provides that "[i]f any term or provision of this letter agreement . . . to any extent be invalid or unenforceable, the remainder of this letter agreement . . . shall not be affected hereby, and each term and provision of the letter agreement shall be valid and enforceable to the fullest extent permitted by law." Pinel Aff. Ex. B, at 9.

[4]      In <u>Great Western Mortgage Co. v. Peacock</u>, the Third Circuit held that "[t]he availability of punitive damages is not relevant to the nature of the forum in which the complaint will be heard. Thus, availability of punitive damages cannot enter into a decision to compel arbitration." 110 F.3d 222, 232 (3d Cir. 1997). However, <u>Great Western</u> does not prevent a court from severing provisions in arbitration clauses that contravene federal statutes and controlling case law. <u>See</u> <u>Spinetti</u>, 324 F.3d at 216 n. 1 (3d Cir. 2003).

Apart from the question of awards of attorney's fees, Monfared contends that the cost-splitting clause is unconscionable because she is unable to afford half the costs of arbitration. Pl.'s Mem. Opp'n 18-23. A party seeking to "invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive . . . bears the burden of showing the likelihood of incurring such costs." Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 92 (2000). The Third Circuit has "consistently held that to meet this burden, a plaintiff must (1) come forward with some evidence to show the projected fees that would apply to their specific arbitrations, and (2) show the party's inability to pay those costs." Hall v. Treasure Bay V.I. Corp., 371 F. App'x 311, 313 (3d Cir. 2010). "Thus, a party seeking to declare a provision awarding arbitration costs unenforceable must proffer some credible and substantiated evidence of that party's financial situation as well as the specific costs of arbitration." Id.

Monfared has failed to meet this burden. First, although she has provided a certification stating that she is "financially unable to pay for half the costs of the arbitrator and other associated costs," she has provided minimal information about her current financial status and the projected arbitration costs. See Monfared Certification ¶ 9, ECF No. 10-2. For example, Monfared provides a list of her current expenses and states that "[s]ince my termination, I have experienced difficulty in paying bills," see id. ¶¶ 14-15, but she provides no information about her current income or assets, other than the fact that she returned to full-time work in March 2015, see id. ¶ 12. With respect to the projected costs of arbitration, which are exclusive of attorney's fees, Monfared states that she anticipates that these "would amount to costs in excess of several thousand dollars," but she does not explain how she arrived at this estimate. Id. ¶ 18. In short, the information provided by Monfared is not sufficient for the Court to determine that arbitration would be prohibitively expensive for her.

Plaintiffs are ordinarily entitled to an opportunity for limited discovery on the issue of the costs of arbitration. See Blair v. Scott Specialty Gases, 283 F.3d 595, 609 (3d Cir. 2002) ("Without some discovery, albeit limited to the narrow issue of the estimated costs of arbitration and the claimant's ability to pay, it is not clear how a claimant could present information on the costs of arbitration as required by Green Tree and how the defendant could meet its burden to rebut the claimant's allegation that she cannot afford to share the cost."). Accordingly, the parties shall have thirty days to conduct limited discovery on the sole issue of the costs of arbitration and Monfared's ability to pay those costs, relative to the costs of litigation before this Court. If Monfared is able to show that she is unable to pay the costs of arbitration, this provision too can be severed from the Agreement. See Spinetti, 324 F.3d at 216-18 (affirming district court's severance of cost-splitting provision in arbitration agreement).

**IV.    Order**

Accordingly, this 22nd day of April, 2016, **IT IS ORDERED** that:

1.      Defendants' Motion to Compel Arbitration, ECF No. 7, is **GRANTED**.

2.      The portions of the arbitration clause prohibiting punitive and exemplary damages and prohibiting the arbitrator from awarding attorney's fees are severed from the clause, with the result that the arbitrator is permitted to award punitive damages and attorney's fees consistent with Title VII and § 1981.

3.      The parties shall have until **May 23, 2016,** to complete discovery on the issue of the costs of arbitration and Monfared's ability to pay those costs. No later than **May 30, 2016,** Monfared shall file a brief in support of her contention that the allocation of the costs of arbitration called for by the Letter Agreement is unconscionable. Defendants shall file any brief in response no later than **June 6, 2016.**

10

BY THE COURT:


*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge