UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____

ZIBA MONFARED,                                              :
                                                            :
          Plaintiff,                                   :
          v.                                           :   No. 5:15-cv-04017
                                                            :
ST. LUKE'S UNIVERSITY HEALTH                                :
NETWORK;                                                    :
ST. LUKE'S PHYSICIAN GROUP, INC.;                           :
NAZARETH FAMILY PRACTICE,                                   :
                                                            :
          Defendants.                                  :
_____

**MEMORANDUM OPINION AND ORDER**

**Joseph F. Leeson, Jr.**                                                  November 2, 2016
**United States District Judge**

**I.   Introduction**

In July 2015, Plaintiff Ziba Monfared filed a Complaint against Defendants, her former employers, alleging that she was terminated because of racial discrimination. Defendants moved to compel Monfared to arbitrate her claims based on an arbitration clause in her employment contract. While the Court found the arbitration clause to apply to Monfared's claims, the Court reserved judgment on whether a cost-splitting provision in the arbitration clause could be enforced, and the Court permitted the parties to conduct discovery on this issue. *See* Mem. & Order, April 22, 2016, ECF No. 14. The parties have now completed discovery and filed briefs on this matter. Because Monfared has not shown that the costs of arbitration would be prohibitively expensive, the Court finds that the cost-splitting provision is enforceable.

1

## II.     Legal Framework – Enforcement of Fee-Splitting Clauses in Arbitration Agreements

The United States Supreme Court has "made clear that arbitration is only appropriate 'so long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum.'" *Blair v. Scott Specialty Gases*, 283 F.3d 595, 605 (3d Cir. 2002) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)). In *Green Tree Financial Corp.–Alabama v. Randolph*, 531 U.S. 79 (2000), the Supreme Court acknowledged that "the existence of large arbitration costs could preclude a litigant . . . from effectively vindicating her federal statutory rights in the arbitral forum." *Id.* at 90.

"A party seeking to invalidate an arbitration agreement because arbitration would be prohibitively expensive bears the burden of showing this likelihood." *Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 217 (3d Cir. 2003). The Court of Appeals for the Third Circuit has "consistently held that to meet this burden, a plaintiff must (1) come forward with some evidence to show the projected fees that would apply to their specific arbitrations, and (2) show the party's inability to pay those costs." *Hall v. Treasure Bay V. I. Corp.*, 371 F. App'x 311, 313 (3d Cir. 2010). "While the courts have yet to specifically define what quantum of proof is required to sustain a claimant's burden of proving such prohibitively expensive arbitration costs as would render an arbitration agreement unenforceable, *Green Tree* dictates that such an analysis be undertaken on a case-by-case basis." *Cuie v. Nordstrom, Inc.*, No. CIV.A 05-CV-4771, 2005 WL 2922017, at *6 (E.D. Pa. Nov. 3, 2005) (citing *Spinetti*, 324 F.3d at 216–217).

**III.     Monfared has not shown that the costs of arbitration would be prohibitively expensive for her.**

**A.     Monfared's estimates of the costs of arbitration**

Monfared's employment agreement states that any disputes between Monfared and Defendants arising out of the agreement "shall be resolved by binding arbitration" and that "[a]ll costs of . . . arbitration shall be evenly divided between the parties." Pl.'s Br. Ex. A, at 8, ECF No. 28-1. The agreement specifies that the arbitration will be governed by the Employment Arbitration Rules of the American Arbitration Association ("AAA"). *Id.* Accordingly, Monfared estimates her share of the arbitration fees based on the AAA's Employment Arbitration Rules fee schedule. *See* Pl.'s Br. Ex. B, ECF No. 28-2.[1] The fee schedule sets the amount of administrative fees based on the amount of the claim. *See id.* at 3. Monfared states that her case is an "undetermined monetary claim," which requires an Initial Filing Fee of $7,000.00 and a Final Fee of $7,700.00. *See* Pl.'s Br. 2-3 & Ex. B at 3.[2] These administrative fees do not include compensation for the arbitrator, and Monfared estimates that amount by using a list provided by the AAA of eligible arbitrators in the region and their rates. *See* Pl.'s Br. Ex. C, ECF No. 28-3. According to Monfared, the list reflects that arbitrator hearing and study compensation rates range between $250.00 and $550.00 per hour, and arbitrator compensation for travel may be between $150.00 and $550.00 per hour. If the arbitrator compensation is not billed hourly, the costs may amount to as much as $4,500.00 per day. *See* Pl.'s Br. 3 & Ex. C. She estimates that the arbitration hearing in this matter will span several days, based in part on her expectation that

---

[1]     The fee schedule includes two separate and distinct subsections: a subsection for "Disputes Arising Out of Employer Plans" and a subsection for "Disputes Arising Out of Individually-Negotiated Employment Agreements and Contracts." *See* Pl.'s Br. Ex. B, at 1. Monfared's presentation of her estimated costs appears to contemplate that her dispute falls into the latter category.

[2]     The Initial Filing Fee is payable either in full when a claim is filed or under a structured payment plan, the latter of which results in a higher total filing fee. *See* Pl.'s Br. Ex. B, at 3.

the hearing will include at least six witnesses. *Id.* at 4. She contends that "[i]f the parties retain experts or have additional witnesses than originally anticipated, the arbitration could last up to five (5) days or more, or potentially total as much as $22,500.00 – without regard for study time, motion practice, travel, or costs of the ultimate decision on the merits." *Id.* at 12. As noted above, the arbitration agreement would require her to pay half of the total costs.

**B.      Monfared's finances**

According to Monfared, at the time that Defendants terminated her employment, she was earning over $200,000 per year, and she had a little over $18,000 in her savings account. Pl.'s Br. 4. Following her termination, she was unemployed for approximately nine weeks. *Id.* Her salary in her current position is $135,000 per year, and she currently has $1,300 in her checking account and $1,000 in her savings account. *Id.* at 4-5. She estimates that she has the following expenses:

- Automobile loan (Toyota): $375.88 per month ($4,510.56 per year)
- Automobile loan (Nissan): $408.27 per month ($4,899.24 per year)
- Automobile insurance (for both vehicles): $200.17 per month ($2,402.04 per year)
- Condominium mortgage payment: $117.53 per month ($1,410.36 per year)[3]
- Rent $1,000 per month ($12,000 per year)[4]
- Student loan: $264.27 per month ($3,171.24 per year)
- Home equity loan: $736.18 per month ($8,834.16 per year)
- Homeowner's insurance: $448.00 per year
- Annual fees required to maintain medical licenses: between $2,000.00 and $4,000.00 per year
- Health insurance for Monfared and her daughter: $728.48 per month ($8,714.76 per year)

---

[3]      Monfared states that she is currently renting out her condominium for $1,640.00 per month, which is $117.53 less than her monthly $1,757.53 mortgage payment for the unit. *Id.* at 5-6.

[4]      Monfared states that she is currently residing with her daughter and ex-husband, Richard Maier, and that she pays Maier $1,000 per month in rent. *Id.* at 5-6.

- Annual property taxes: $7,000.45 per year
- Homeowner's Association Fees: $150.00 per month ($1,800.00 per year)

*Id.* at 6-7.

In sum, Monfared states that "each year, in comparison to her annual salary, [she] incurs expenses/debts in excess of $58,730.00 per year, not including normal financial obligations such as groceries, gas, clothing and the like." *Id.* at 8. In addition, Monfared states that she currently "contributes to expenses on behalf of her daughter, including but not limited to groceries, clothing and normal extracurricular activities." *Id.* at 5.[5] Monfared states that having to pay half the cost of the arbitration fees would cause her "increased difficulty" in paying her bills and could leave her vulnerable to large, unforeseen expenses she may encounter in the future. *Id.* at 8, 17. She asserts that if the Court upholds the fee-splitting provision, she will be deterred from proceeding with her claims. *Id.* at 18.

In response to Monfared's estimate of the costs of arbitration, Defendants contend that Monfared's estimate of the length of the hearing, and the resulting cost thereof, is unsupported because she does not identify the persons whom she expects to testify or the anticipated scope of their testimony. Defs.' Br. 10, ECF No. 34. With respect to Monfared's financial status, Defendants point out that Monfared earned wages of $194,405.00 from Defendant St. Luke's Physician's Group in 2014 and earned wages of at least $189,672.52 from her employers in 2015, *id.* at 4, and they contend that Monfared's "high compensation is a highly relevant factor for the Court and should be its starting point," Defs.' Sur-Reply 2, ECF No. 41. Defendants also dispute a number of Monfared's statements concerning her financial status. For example,

---

[5]  Monfared also states that she has credit card debt in excess of $20,000 and that if she is required to pay arbitration costs she "would certainly be unable to make my monthly credit card payments." *See* Pl.'s Br. Ex. E ¶ 13, ECF No. 28-5. However, she does not provide an estimate of her monthly or yearly payment on that debt. *See* Pl.'s Br. at 7.

5

whereas Monfared states that she pays her ex-husband, Richard Maier, $1,000 in rent monthly, Defendants cite Maier's testimony that Monfared does not pay any rent to him. *See* Defs.' Br. 8 (citing Defs.' Br. Ex. 7, at 22:5-8, ECF No. 34-7).

**D.     Analysis**

As the Third Circuit observed in *Spinetti*, there is no prevailing formula for determining whether a plaintiff has met her burden in showing that arbitration would be prohibitively expensive. *See Spinetti*, 324 F.3d at 217. Rather, the issue must be assessed on a case-by-case basis. *See id.* Monfared points out that a number of courts have found cost-splitting or cost-shifting provisions in arbitration clauses to be unenforceable in employment cases. Each of these cases, however, involved employees who were unemployed or employed in low-wage positions. In *Spinetti*, for example, the plaintiff, who had previously earned $63,000 annually, was unemployed for six months. *See id.* When she found new employment, she was earning less than $300 per week, while her monthly expenses for food and rent totaled approximately $2,000. *Id.; see also Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256 (3d Cir. 2003) (determining that two discharged refinery workers clearly could not "meet th[e] financial burden [of arbitration costs]"); *Hall v. Treasure Bay V.I. Corp.*, 371 F. App'x. 311, 313 (3d Cir. 2010) (holding that a plaintiff who was earning eight dollars per hour met her burden of showing that arbitration costs would be prohibitive); *Cirino v. L. Gordon Holdings, Inc.*, No. 13-CV-4800, 2014 WL 2880291, at *7 (E.D. Pa. June 25, 2014) (concluding that the plaintiff could not pay the costs of arbitration when he remained unemployed after being terminated, had "great difficulty paying basic expenses," and had "approximately twenty ($20) dollars in his name"); *Hodges v. SCE Envtl. Grp., Inc.*, No. 3:11cv1410, 2012 WL 1899669, at *5 (M.D. Pa. May 24, 2012) ("[Plaintiff] . . . states that he is married with one child and has been unable to secure employment since

defendant terminated him. . . . We accept plaintiff's certification and find that he cannot pay the costs as he alleges.").

When a lower-wage plaintiff challenges a cost-splitting or cost-shifting provision, as in the cases cited above, there is little need to conduct an extensive inquiry into his or her finances to reach the conclusion that the plaintiff cannot afford the costs of arbitration. *See Giordano v. Pep Boys—Manny, Moe & Jack, Inc.*, No. CIV. A. 99-1281, 2001 WL 484360, at *6 (E.D. Pa. Mar. 29, 2001) (stating that courts are not required "to undertake detailed analyses of the household budgets of low-level employees to conclude that arbitration costs in the thousands of dollars deter the vindication of employees' claims in arbitral fora"). But when a higher earner like Monfared claims that she cannot afford arbitration costs, she necessarily must provide more detail about her finances to demonstrate that her salary does not allow her to pay the costs. *See id.* (contrasting the "easy case" of a plaintiff who was "a fairly low-level employee of Pep Boys earning a relatively low wage of $400.00 per week at the time of his termination" with cases involving "highly paid employees").

Although Monfared has presented some information about her estimated costs of arbitration and about certain aspects of her finances, she has not shown that her share of the arbitration costs would be prohibitively expensive. As indicated above, Monfared states that her current annual salary is $135,000 and her itemized yearly expenses are "in excess of $58,730.00." This results in a difference of $76,270, which is a substantial sum. Presumably her gross income would be reduced to some degree by her income taxes, but she has not provided an estimate of these to the Court. In addition, as Monfared points out, the expenses she has itemized do not include "groceries, gas, clothing, and the like," payments to support her daughter, and any payments Monfared is required to make toward her existing debts. But Monfared has not

7

provided the Court with estimates of any of these figures. In short, despite the relatively detailed information Monfared has provided about some of her expenses, she has not provided a complete estimate of the difference between her take-home pay and her expenses. In the absence of this information, and in view of her relatively high salary, the Court is unable to conclude that her share of the estimated arbitration costs would be prohibitively expensive for her.

**IV.  Order**

Accordingly, this 2nd day of November, 2016, **IT IS ORDERED THAT**:

1. The parties shall proceed to arbitration of Plaintiff's claims in accordance with the terms of the written arbitration agreement executed by the parties;

2. This case is **STAYED** pending the outcome of those proceedings.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge